# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL CASE NO. 2:09cv037

| | |
|---|---|
| MICHAEL HAROLD ELLIOTT, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 13], to which Plaintiff has filed a Response [Doc. 15].

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and Disability Insurance Benefits and for Supplemental Security Income payments on August 3, 2005, both alleging disability with an onset of July 17, 2004. [Transcript ("T.") 73]. Plaintiff's claims were denied initially and on reconsideration. [T. 57-60, 48-9]. A hearing was held before Administrative Law Judge (hereinafter, "ALJ") Gregory Wilson on July 1, 2008, at which

Plaintiff, who was represented by counsel, appeared and testified. [T. 660-697]. On September 17, 2008, the ALJ issued a decision denying the Plaintiff benefits. [T. 19-31]. The Appeals Council initially denied Plaintiff's request for review. [T. 8-11]. Plaintiff then filed a motion for reconsideration, on the grounds that contentions and evidence he submitted had not reached his file before the Appeals Council acted [T. 641-3]. The Council allowed that motion, but upon considering additional evidence, denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 3-7]. Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. FACTS AS STATED IN THE RECORD

The Plaintiff was 44 years old at the time of the ALJ's hearing. [T. 73, 660]. He completed high school and Basic Law Enforcement Training. [T. 663]. His past relevant work was as a correctional officer, a private security guard, a private security law enforcement officer, and a data entry clerk. [T. 688].

Plaintiff asserts that his disabling impairments are arm and knee problems and pain in the arm, knee and lower back; obesity; diabetes; bipolar disorder; and borderline personality disorder. [T. 665-6, 673]. He claims that he first became unable to work due to these conditions on July 17, 2004, the date of a work-related motor vehicle accident. [T. 73]. Other than two unsuccessful work attempts, he has not worked since that time.

At the hearing before the ALJ, Dr. Kathleen Robbins testified as a vocational expert (VE). In evaluating Plaintiff's past work, Dr. Robbins noted Plaintiff's highest specific vocational preparation, or SVP, as a level 4, his highest exertional level as medium, and his highest skill level as semi-skilled. [T. 688].

The ALJ then posed the following hypothetical question ("the first hypothetical") to Dr. Robbins:

> Q. Please assume that you're dealing with a hypothetical individual the same age as the Claimant, with the same educational background and past work experience. Further assume this hypothetical individual can stand six of eight hours, walk six of eight hours, and sit six of eight hours. This individual would need a sit-stand option with walking and standing limited to 45 minutes at a time. Sitting would have no limitations. Could be six hours, eight hours straight. Pushing and pulling in the upper extremity would be occasional. Pushing and pulling in the lower extremity would likewise be occasional. . . . Ropes,

4

ladders, and scaffolds would be never. Hazards, avoid concentrated exposure. Climbing, balancing, kneeling, and crawling occasional. This individual can do simple, one-, two-step tasks. This individual would need a low-stress work environment. To accommodate that it would be non-production. By non-production I mean no assembly type of work where there were high levels of productivity, producing a product in a high speed or putting a component in a high speed manner. I recognize every job requires some type of production. Also to accommodate the low stress, occasional contact with the public. Could such an individual perform any of the Claimant's past relevant work as actually performed by the Claimant, or as generally performed in the national economy?

[T. 688-9]. Dr. Robbins responded that such a hypothetical individual would not be able to perform the Plaintiff's past relevant work. [T. 689]. When asked whether there was work in the national economy that such an individual could perform, Dr. Robbins requested a clarification of the ALJ's hypothetical:

> A. Was it -- okay. **And was there a sit -- you talked about a sit-stand option, was it?**
>
> Q. **No limitation. Sitting can be six hours or eight hours straight.**
>
> A. Okay. So we're looking at - - okay, yes, Your Honor. Thank you. Looking at sedentary work here. And this is going to be -- [the] type of work that this individual could do would be unskilled work such as office clerk type of work. The DOT lists an office helper as light and unskilled with an SVP of 2. And

> the DOT gives a general listing of occupations that -- there are jobs that exist exertionally above and below a DOT definition, and also above and below in the ability to work with the skill levels. And at the sedentary level, I can give numbers here for North Carolina which would be classified as the local economy. And there would be approximately 2,000 of these positions in the local economy. Nationally [there would] be approximately 55,000. And [an] individual could also do work such as surveillance system monitoring. And in North Carolina there are approximately 1,800 of these positions, nationally approximately 40,000. The DOT lists this as a sedentary occupation with an SVP of 2. And I believe that's the type of work available, Your Honor, under this hypothetical with the restrictions provided here.[T.
>
> 690 (emphasis added)].

The ALJ then posed a second and third hypothetical to Dr. Robbins:

> Q. Hypothetical number two is the same as hypothetical number one. The only modifications is that handling bilaterally would be frequent. And stress would be defined -- added to the definition as occasional changes in the work setting. Would that affect your answer?
>
> A. No, Your Honor.
>
> Q. Hypothetical number three would be the same as hypothetical number two. The only modifications is that this person would miss various times from the workplace. They would not be able to leave the house. They wouldn't show up for work, or they would have to leave work and return home, so they would be absent from the workplace. Frequency and duration of which would be in the sole discretion of

>   this hypothetical individual. Would that affect your answer?
>
>   A. Yes, Your Honor.
>
>   Q. How?
>
>   A. I would state this individual would be unemployable in any occupations in the local or national economy. And the reason for my opinion is work is not done at the sole discretion of the individual. They would also not be meeting time and attendance.

[T. 691].

## V. THE ALJ'S DECISION

On September 17, 2008, the ALJ issued a decision denying the Plaintiff's claim. [T. 19-31]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2009. He then found that Plaintiff had not engaged in any substantial gainful activity since his alleged onset date of July 14, 2004. [T. 21]. The ALJ then found the following impairments to be severe impairments: status post right knee fracture, status post left arm fracture, sleep apnea, and bipolar disorder. [T. 21]. The ALJ concluded, however, that the severe impairments did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [T. 24]. The ALJ assessed the Plaintiff's residual functional capacity, finding that

he could lift 15 pounds frequently and occasionally; sit, stand and walk six of eight hours with a sit-stand option every 45 minutes; frequently handle; occasionally push/pull with the left arm and right leg; occasionally climb, balance, kneel, and crawl; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; avoid hazards; and only perform simply one and two step tasks in a low stress, non-production environment with only occasional public contact and changes in the work setting. [T. 25-6]. He found that Plaintiff was unable to perform his past relevant work. [T. 30]. Transferability was not an issue. [Id.]. The ALJ obtained the testimony of a vocational expert to determine that jobs did exist in significant numbers within the thus reduced unskilled light occupational base. [T. 31]. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from July 14, 2004 through the date of the ALJ's decision. [Id.].

## VI. DISCUSSION

On appeal, the Plaintiff asserts the following assignments of error: (1) the Appeals Council failed to make specific findings regarding new information he submitted; (2) the ALJ erred in relying upon the VE's answers to hypothetical questions that did not match the Plaintiff's RFC; (3) the ALJ erred in evaluating the opinion evidence of the treating and examining experts; and

(4) the ALJ erred in relying upon the VE's testimony, when such testimony was based upon jobs that were outside the Plaintiff's RFC and not reconciled to the Dictionary of Occupational Titles (DOT). Because the Court finds the Plaintiff's second assignment of error to be dispositive, the Court will not address the other assignments of error raised.

In his second assignment of error, the Plaintiff asserts that the RFC stated by the ALJ as a basis for his hypothetical questions at the hearing failed to correspond with the RFC he stated in his September 17, 2008 decision. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Testimony resulting from inconsistent questioning does not provide substantial evidence to support findings on the vocational issues.

In the present case, the ALJ prefaced his line of hypothetical questions with an RFC that included a sit/stand option. [T. 688]. That limitation clearly appeared to be incorporated into all of his subsequent hypothetical questions.

9

When the VE sought to confirm that a sit/stand option was included in the RFC, however, the ALJ responded that sitting was "unlimited." [T. 690].

Plaintiff argues that the sit/stand option and "unlimited" sitting are inconsistent. Based thereon Plaintiff asserts that testimony elicited by such inconsistent questioning does not constitute substantial evidence that jobs exist in substantial numbers that Plaintiff can perform. The Defendant argues, on the other hand, that the ALJ's response was merely a clarification retaining the sit/stand option. The Court is not persuaded by the Defendant's argument. The VE had reviewed the record and had heard Plaintiff and his wife testify. [T. 687]. Both indicated the need for a sit/stand option. In that context, the fairest interpretation of the VE's question is as a request for confirmation that the sit/stand option is one of the hypothetical conditions. The ALJ responded, "no limitation" (on sitting), eve though Plaintiff's RFC containing a sit/stand option is a form of limitation. Therefore, the Court must conclude that the ALJ's response constituted a retraction of the sit/stand option from his hypothetical. Thus, the only reasonable interpretation of the VE's testimony is that she identified jobs for a hypothetical person with the unlimited ability to sit. The ALJ's decision, however, identifies Plaintiff as a person limited to unskilled light work, and requiring a sit/stand option. [T. 25].

10

The VE, therefore, provided testimony regarding the jobs available for a person with fewer limitations than Plaintiff. The ALJ's reliance on that testimony is not harmless error. According to the Social Security Rulings, a person requiring a sit/stand option is more restricted in the jobs he can do than a person with unlimited ability to sit. A person who must be permitted to stand or walk for a period before returning to sitting -- i.e., the so-called "sit/stand" limitation-- is capable neither of the prolonged sitting required for most sedentary work, nor of the prolonged standing required for most light work. Peterson v. Chater, 96 F.3d 1015, 1016 (7th Cir. 1996) (citing SSR 83-12 at *4). "In cases of unusual limitation of ability to sit or stand, a VS [VE] should be consulted to clarify the implications for the occupational base." SSR 83-12 at *4. Having the sit/stand limitation retracted from the ALJ's hypotheticals fundamentally prevented the VE from identifying whatever erosion of the occupational base arose from the sit/stand limitation particular to the Plaintiff, and thus from identifying jobs a person with his determined limitations could perform.

The VE only identified two jobs [T. 690] numbering 3800 positions in North Carolina, for a person who has an RFC less limited than the Plaintiff. Fair inclusion of the sit/stand option could have rendered the remaining

number of jobs numerically insignificant to meet the Secretary's burden of proof of jobs that exist in substantial numbers that a claimant can perform.

## V. CONCLUSION

This error requires remand. Upon remand, the ALJ shall obtain vocational testimony in which clear questions and clear answers are provided, taking into account any erosion of the occupational base caused by non-exertional limitations. The ALJ shall also hold the record open for Plaintiff's post-hearing submissions addressing the VE's research and testimony. The ALJ shall comply with SSR 00-4p, grant a new hearing, and issue a new decision.

In light of this decision, Plaintiff's other assignments of error need not be addressed, but he is free to raise them upon remand.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying him disability benefits. To any extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 8] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for further administrative action consistent herewith.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: June 21, 2011

Martin Reidinger
United States District Judge